Haggerty, J.
BACKGROUND
The plaintiff, Doreen Smith (“Smith" or “the plaintiff’), a handicapped individual suffering from Post-Polio Syndrome (“PPS”) brought suit against her former employers, Bell Atlantic and Nynex (“the Phone Company” or “the defendants”). The suit was preceded by a complaint filed with the Massachusetts Commission Against Discrimination (“MCAD”) in 1995. In her complaint filed in 1998, Smith alleged that the defendants failed to reasonably accommodate her handicap from 1993 through 1999 by providing: 1) adequate handicapped parking; 2) a shorter commute to the office; and 3) an adequate home office.[1] In anticipation of a May 13, 2002 trial, the court scheduled a conference with counsel to consider housekeeping matters. On May 6, 7 and 9, 2002, numerous motions in limine and oppositions thereto were filed, including the defendants’ motion to exclude the opinion testimony of the plaintiffs expert, Dr. Julie Silver who opined that Smith was rendered permanently disabled by the Phone Company’s failure to reasonably accommodate her. The basis of the request was the unreliability of Dr. Silver’s opinion measured against the Daubert/Lanigan line of cases. Given the lateness of a request for a Daubert hearing, it was agreed that the court would evaluate the testimony during the course of the trial without a separate voir dire hearing.
The trial commenced on May 13, 2002 and continued to May 23, 2002. Dr. Silver was permitted to render her opinion on causation. The defendants’[1] motions for a directed verdict, based in part on the deficiencies of Dr. Silver’s testimony on causation, were denied. The jury returned a verdict for the plaintiff in the following manner. In response to special verdict questions, they concluded that the plaintiff was a qualified handicapped person and that the defendants failed to reasonably accommodate her by providing her with an adequate home office only.[2] The jury awarded the plaintiff $207,000 in damages for emotional distress suffered between 1993 and 1999. The juiy also concluded that the defendants’ failure to reasonably accommodate the plaintiff substantially contributed to her total and permanent inability to work after 1999. For this, the jury awarded the plaintiff $1,000,000 for lost future wages, $300,000 for future medical expenses and life care, and $200,000 for emotional distress commencing after June 2000.
The defendants’ motion for judgment notwithstanding the verdict addresses a number of claimed deficiencies in the evidence relating to liability and causation in this discrimination case. The defendants also move to remit the damages as excessive and duplicative. Finally, the defendants seek to amend the judgment by correcting the amount of interest added to the award.[3]
DISCUSSION
A. Judgment Notwithstanding the Verdict
In considering the defendant’s motion for judgment notwithstanding the verdict, the court must determine whether the evidence presented at trial, viewed in the light most favorable to the plaintiff and without regard to weight or credibility, supports the jury’s findings. See Cambridgeport Savings Bank v. Boersner, 413 Mass. 432, 438 (1992). The question is not how the Court would have evaluated the evidence, but whether “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff. If any such combination of circumstances can be found it is ... immaterial how many other combinations could be found which would have led to conclusions adverse to the plaintiff.” Magaw v. MBTA, 21 Mass.App.Ct. 129, 132, quoting Campbell v. Thornton, 368 Mass. 528, 535 (1975).
1. Causation Issues
a. The testimony of Dr. Julie Silver as Measured by Daubert/Lanigan[4]
Dr. Silver is a physiatrist who specializes in treating patients with major injuries involving the musculo-skeletal system, including patients with PPS. After her graduation from medical school in 1991, she became a resident in physical medicine and rehabilitation at the National Rehabilitation Hospital in Washington D.C. from 1991 to 1995. Dr. Silver became board certified in those specialties in 1996.
Since 1996 Dr. Silver has been the medical director of the Spaulding-Framingham Outpatient Center where she treats polio survivors and other patients with musculo-skeletal issues. In her career, Dr. Silver has seen over 1000 patients with PPS. She has written numerous articles on PPS and has authored a book entitled “Post-Polio Syndrome, a Guide for Polio Survivors and their Families.” Dr. Silver has also co-edited a book entitled “Essentials of Physical Medicine and Rehabilitation,” which includes a chapter on PPS. She has published on subjects ranging in topics from PPS to medicolegal issues.
According to Dr. Silver, polio is a virus which attacks the central nervous system by killing or damaging nerve cells; it afflicted people in the early part of the twentieth century. There was a wide range of affliction from a minor flu-like condition to paralysis and confinement in an iron lung. PPS is a syndrome characterized by various symptoms, including pain, new weaknesses, new breathing problems, new swelling, cold intolerance. It is a slowly progressive but constant syndrome that surfaces in polio survivors decades following the original polio affliction. The primary treatment is treatment of the symptoms. The physical limitations of PPS patients increase as they age.
*169 Dr. Silver is familiar with two studies concerning the relationship between PPS and the ability to work. She admitted on direct examination that the topic has not been well studied and there is no indication from her voluminous resume that she has conducted such studies. In the first study which Dr. Silver identified as the Swedish study, it was determined that 60% of polio survivors with PPS had jobs as compared to 70% of the general population. In the second study, which was not identified in any way, the degree of paralysis was not a major factor in whether survivors worked but the existence of accommodation was a factor.[5]
Although the plaintiff continued treatment with her primary care physician and a few orthopedists, the plaintiff also began treatment with Dr. Silver in 1996. At that time, Dr. Silver learned the plaintiffs complete medical history[6] and recommended a course of physical and occupational therapy. She recommended that the plaintiff decrease the overuse of her arms as her arms were the key to her independence; the plaintiff had limited use of her lower extremities. In Dr. Silver’s opinion, the plaintiff also required the following work-related accommodations: a shorter commute to the office; accessible handicapped parking; and a home office. According to Dr. Silver, these accommodations would necessitate fewer transfers and would alleviate the stress on Smith’s arms and shoulders from driving unnecessary distances. Between 1997 and 1998, Dr. Silver repeatedly communicated by letter and phone to the Phone Company the need for the recommended accommodations. In a letter of October 1999, Dr. Silver recommended that the plaintiff work exclusively at home. Finally, in December 1999, Dr. Silver recommended that the plaintiff stop working because, in her view, the necessary accommodations were not forthcoming. The plaintiff had become progressively depressed and totally disabled.
As Dr. Silver was making recommendations for Smith’s working life she was simultaneously making recommendations for other aspects of the plaintiffs life. In 1997, as a result of the occupational therapist’s visit to the plaintiffs home, Dr. Silver recommended that Smith’s home be made more handicapped accessible by removing the clutter, using a reacher to retrieve items in cabinets and on shelves, installing handle bars in the bathroom, and purchasing a motorized hospital bed. According to Dr. Smith, the plaintiff made these recommended changes. In 1997, Dr. Smith also prescribed a motorized wheelchair for use at home to minimize the use of crutches, and thus to minimize the deterioration in the use of her arms.[7] In March 1997, Dr. Silver recommended that the plaintiff find other suitable housing that was completely accessible for a scooter or motorized wheelchair. She was aware that the plaintiff was overusing her arms, that she had rotator cuff problems and carpal tunnel syndrome. Despite this prescription and recommendation, Dr. Smith acknowledged that as of March 2000, the plaintiff had not acquired a motorized wheelchair for home use.
Dr. Silver acknowledged that falls put the use of the arms at risk. In a September 3, 1997 note, Dr. Silver acknowledged that the plaintiff had fallen in her garage while transferring from her crutches to her scooter. Dr. Silver acknowledged anote indicating that in June 1998 the plaintiff had 7 recent falls.
On the basis of her treatment of the plaintiff and over 1000 polio survivors in her six-year career at the Spaulding-Framingham Outpatient Center and on the basis of the literature, including the two unidentified studies, Dr. Silver opined that the major contributing factor to the plaintiffs disability was the Phone Company’s failure to provide accommodations.[8] She further opined that, with reasonable accommodations the plaintiff would have worked until retirement at age 65. Dr. Silver admitted that she rendered the opinion despite the fact that she was unaware of the plaintiffs daily routine and work schedule during the pertinent period of time.
The defendants do not contest that the plaintiff suffers from PPS nor do they contest that Smith is permanently disabled. They do, however, attack the reliability of Dr. Silver’s opinion that the failure to reasonably accommodate Smith’s handicap caused her total disability. It is the role of the trial court as gatekeeper to assess “whether the reasoning or methodology underlying the testimony is scientifically valid and [] whether that reasoning or methodology properly can be applied to the facts in issue.” Commonwealth v. Lanigan, 419 Mass. 15, 26 (1994). Where there are methodological flaws in the basis of the expert’s opinion, including flaws in the application of the opinion to the facts of the case, such that the expert lacks solid ground for her conclusion, the court should exclude the expert’s opinion. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). Stated otherwise, if the process or theory underlying an expert’s opinion lacks reliability it should be excluded. Lanigan, at 26.
Opinions based on personal observation and clinical experience are subject to the Daubert/Lanigan analysis. Theresa Canavan's Case, 432 Mass. 304, 313 (2000). While the trial court should focus on an expert’s methodology, rather than her conclusions, they “are not entirely distinct from one another.” General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997). “(T]rial judges may evaluate the data offered to support an expert’s bottom-line opinions to determine if that data provides adequate support to mark the expert’s testimony as reliable.” Ruiz-Troche v. Pepsi Cola of Puerto Rico, 161 F.3d 77, 81 (1998). Finally, an expert’s failure to eliminate alternative causes of a patient’s condition renders her testimony inadmissible. Rutigliano v. Valley Business Forms, 929 F.Sup. 779, 786 (D.N.J. 1996), aff'd, 118 F.3d 1577 (3d. Cir.1997).
*170 There is no question that Dr. Silver, by virtue of her training and six years of experience at the FYamingham-Spaulding Outpatient Center, has an expertise in the field of PPS. However, an expertise in PPS does not render the expert’s opinion admissible without Daubert/Lanigan scrutiny. For her conclusion that the plaintiff was rendered permanently disabled by the Phone Company’s failure to provide reasonable accommodations Dr. Silver relied primarily on her observations of the plaintiff and her clinical experience.[9] There was no evidence that Dr. Silver’s theory of causation has been subjected to peer review and publication, that the theory has been tested, that the theory has a known error rate, and that the theory has general acceptance in the scientific community. Lanigan, at 25. However, Dr. Silver relied upon her personal observation, clinical experience and. unidentified literature in rendering her opinions on causation. The method underlying personal and clinical observation is subject to the Daubert analysis and must be reliable. Kumho Tire Co., v. Carmichael, 526 U.S. 137, 157 (1999); Theresa Canavan’s Case, at 313-14.
The major flaw in the reliability of Dr. Silver’s methodology relates to what she did not know about the day-to-day activities, personal and professional, of Smith. Dr. Silver did not know the plaintiffs work activities, her medical absences both brief and lengthy, the days and weeks that the plaintiff worked at home, the details of her life at home, the details and extent of Smith’s surgeries and the extent of recovery therefrom, and whether and to what extent the Phone Company had provided some accommodation. Thus, the data from which Dr. Silver rendered her opinion is fatally flawed by its inadequacy and thus, renders her methodology unreliable. As a threshold matter, there was too great a gap between what Dr. Silver knew about Smith’s work schedule and life during the rele-. vant period of time to reliably opine that the plaintiffs total disability was caused by the failure to provide reasonable accommodation. Moreover, the absence of this data rendered Dr. Silver unable to adequately explain why she excluded other potential causes of Smith’s total disability.[10] Dr. Silver’s testimony should have been excluded. Without this testimony, there is no independent evidence of a causal connection between the Phone Company’s failure to accommodate and the plaintiffs total disability.
b. Workers’ Compensation Act
There is no merit to the defendants’ claim that Smith’s claims of handicap discrimination pursuant to G.L.c. 151B are pre-empted by the Workers’ Compensation Act, G.L.c. 152. See Foley v. Polaroid Corp., 381 Mass. 545, 553 (1980). See Doe v. Purity Supreme, Inc., 422 Mass. 563, 567 (1996) and Green v. WymanGordon, 422 Mass., 551, 554-55 (1996).
2. Liability Issues
The defendants argue deficiencies in the plaintiffs case on liability in four areas. First, the defendants claim that, as a matter of law, they were not required to provide the plaintiff with a home office and thus, they can not be liable for the claimed inadequacy of this accommodation. For this argument, they rely upon VandeZande v. Wisconsin Dept. of Admin., 44 F.3d 538, 545 (7th Cir. 1995). However, VandeZande does not hold that a home office may never be a required accommodation. First, Vande Zande states that most jobs “generally cannot be performed at home without a substantial reduction in the quality of the employee’s performance.” Id. at 544-45 (emphasis supplied). Moreover, the Seventh Circuit recognized that the situation “will no doubt change as communications technology advances ...” Id. Finally, the Seventh Circuit recognized that there was a contrary view in other circuits, albeit the minority view. While there may be some jobs which of necessity require a physical presence in an office or physical plant of the employer, many do not. Whether providing a home office to the plaintiff was reasonable was a question of fact which was resolved adversely to the defendants.
The defendants next argue that no reasonable jury could have found that the plaintiffs home office was inadequate. However, in viewing the evidence in the light most favorable to the plaintiff the jury heard the following: the plaintiff spent her own money to purchase necessary equipment for her home office; the Phone Company refused to provide her with the necessary technical assistance; and, the Phone Company refused to give her adequate computer access to the information necessary to the performance of her job, thereby necessitating increased travel to the office. In the light most favorable to the plaintiff, there was evidence that a company with the technical prowess of the phone company did not provide an adequate home office to satisfy the requirement of a reasonable accommodation.
The defendant’s third argument addresses the lack of evidence that Smith was a “qualified handicapped individual.” In the context of a motion for judgment notwithstanding the verdict, this argument is without merit. A “qualified handicapped person” is a person capable of performing the essential functions of her job with or without reasonable accommodation. G.L.c. 151B, §1(16). See Cox v. New England Telephone & Telegraph, 414 Mass. 375, 381-84 (1993). Although there was evidence to the contrary, Smith testified that she was capable of performing the essential functions of her job (analysis of data and preparation of reports) with reasonable accommodations. She also testified that travel was not an essential function of her job. An employee is not precluded from describing her job nor from testifying that she could perform the essential functions of her job. Thus, there was evidence from which the jury could find that Smith was a “qualified handicapped person.”
The final issue raised by the defendants concerns their claim that Smith did not properly file her complaint alleging discrimination with theMCAD. See G.L.c. 151B, §5. Smith filed her complaint with the MCAD on December 4, 1995 against the Phone Company and Olson. In *171 her accompanying affidavit, the plaintiff alleged that “(s]ome of the ‘special assignment’ work could have been performed by me from my home, however, Mr. Olson [the supervisor] refused to provide me with any support or the minimal equipment that would have made it possible to reduce my need to travel.” The affidavit continues and details in other ways Mr. Olson’s failure to accommodate Smith’s physical handicap between 1994 and 1995. The MCAD’s investigation of the case continued until November 1998 and the plaintiff filed this suit in that year. As to the plaintiffs supervisors, Olson was replaced by Roberta Swanson-Hook in 1996 or 1997 and Swanson-Hook was replaced by William Haid (“Haid”) in late 1997. Smith made the same requests for an adequate home office of the subsequent supervisors but did not make additional complaints specifically about them with the MCAD. The defendant claims that the jury verdict is based in part on the failings of Swanson-Hook and Haid and therefore, Smith should have filed additional complaints against them with the MCAD.
G.L.c. 15 IB, §9 provides that “provisions of this chapter shall be construed liberally for the accomplishment of the purposes there of. . .” The purpose of the mandated administrative proceeding is to give the agency an opportunity to conciliate the claim and for the parties to avoid a civil suit. Smith v. Mitre, 949 F.Sup. 943, 948 (D.Mass. 1997). The request for a home office was made by Smith in her 1995 complaint with the MCAD and was an ongoing request. That her supervisors changed while the matter was pending with the MCAD did not deprive the agency of the opportunity to resolve the matter short of a civil suit. Smith’s claim of an inadequate home office did not create a new basis of discrimination with each supervisor. Contrast the situation where a plaintiff files a civil complaint for gender discrimination where the only issue raised before the MCAD was age discrimination. See Rizzo v. WGN Continental Broadcasting Co., 601 F.Sup 132, 135 (N.D.Ill. 1985) (where sex discrimination claim did not relate back to earlier filed claim of age discrimination). To require the plaintiff to amend a continuing violation charge of handicap discrimination as each supervisor changes is to add unnecessary delay and expense to the process. More importantly it would undermine the purposes of the statute. In sum, this argument entitles the defendants to no relief.
B. Damages[11]
The defendants make a number of arguments relating to the damages in the case. First, the defendants claim that the award of $207,000 for emotional distress from 1993 to 1999 is excessive. A court should not grant relief unless it appears that a miscarriage of justice will result in the absence of relief. Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 292 (1993); Moose v. Massachusetts Institute of Technology, 43 Mass.Ct. 420, 427 (1997). There should be no reduction to an award that does not “so shock[ ] the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.” Labonte v. Hutchins & Wheeler, 424 Mass. 813, 825, quoting Mather v. Griffin Hosp., 540 A.2d 666 (Conn. 1988). Moreover, a plaintiff does not have to show physical injury in a discrimination case to recover for emotional distress. Labonte, at 824. The jury could have found the following facts in support of this award: Smith’s work at the Phone Company was the plaintiffs whole life; when her handicap forced her to work at home the defendants failed to provide her with adequate tools for performing her job; although a major portion of her job as a second level manager required access to Phone Company data, she was not provided with the tools to perform her job such as adequate computer equipment, Lotus Notes and high speed internet access; and, as a result, she was not only frustrated but experienced inadequacy at her job and thus, the plaintiff suffered from anxiety and diminished self-esteem. Viewed in this light, the damage award is not excessive. Related to the emotional distress award is the defendants’ claim that there was double recovery because the jury awarded a separate amount of $200,000 for future emotional distress following Smith’s total disability. The jury instructions and the verdict slip made clear that the award for future emotional distress was a separate and distinct award from any award for emotional distress for events prior to the year 2000. Thus, there was no double recovery for emotional distress.
The defendants next argue that the award for front pay of $1,000,000 is speculative and it should be offset by the amount of money the plaintiff receives yearly in long term disability. As to the defendants’ argument of speculative damages they claim that no reasonable jury could have found that the plaintiff would have worked to age 65. This argument ignores the testimony of Smith and Dr. Silver that the plaintiff would have worked to age 65 but for the defendants’ failure to accommodate. The jury was free to reject (and did so) testimony to the contrary. The second argument the defendants make with respect to the front pay award is one which was the subject of a pre-trial motion in limine and was raised again during the trial. The defendants take the position that the collateral source rule does not apply and that the jury should have heard evidence of the long term disability payments. For this proposition, they rely on Jones v. Wayland, 374 Mass. 249 (1978), which they claim renders the colateral source rule inapplicable when the defendant is self-insured. The plaintiff in Jones was a police officer injured by a flying stone and rendered incapacitated as a result of the accident. Jones, at 250-54. Pursuant to G.L.c. 41, §111F, the town was required to pay him while out of work due to the injury. Jones also received payment under the town’s disability policy. Id. The town sought to have Jones’ damages offset by the amount of money he had received under the insurance policy. Id. In its discussion of the colateral source rule the court noted that the rule “is based on the rationale that if there is to be a ‘windfall,’ such benefit should accrue to the injured party rather than to the *172 wrongdoer.” Id. at 262; Buckley Nursing Home, Inc. v. MCAD, 20 Mass.App.Ct. 172, 184 (1985). The court concluded that the collateral source rule was inapplicable where “the party found liable [the town] is not responsible for the injuiy.” Id. at 262. Here the Phone Company is responsible for the injuiy and thus any exception to the collateral source rule does not apply.
The final issue relates to the award of $300,000 for future medical expenses in which the defendants claim that the award is based on faulty logic, is speculative in amount, and is not reduced to present value. First, the juiy was entitled to conclude that future medical expenses could be attributed to the total disability caused by the Phone Company even though Smith had a history of medical needs and expenses. Second, Adele Pollard[12] testified that future medical costs would be between $465,621.12 and $557,330.24. Third, Adele Pollard testified that her calculations are reduced to present value. The defendants are not entitled to remittitur on future medical expenses.
C. Prejudgment Interest
Both parties claim that the interest calculated on the judgment is in error but disagree on the method of correction. Interest in the amount of $815,999.91 was calculated on the basis of the entire award, including the future damages in the amount of 1.5 million dollars. The interest was erroneously calculated from the date of the filing of the complaint in the Superior Court. The Supreme Judicial Court has spoken clearly on the issue of the interest on front pay awards. In Conway v. Electro Switch Corp., 402 Mass. 385, 390 (1988), a discrimination case, the court said the following: ‘We, therefore, see no justification for adding interest to damages which, by definition, are for losses to be incurred in the future.” While the plaintiff is entitled to prejudgment interest on the past emotional distress to be calculated from date of filing of the complaint she is entitled to no interest on the awards for future damages.[13]
ORDER
It is hereby ORDERED that judgment notwithstanding the verdict shall enter for the defendants as to future wages, future medical and life care costs and future emotional distress. The judgment on the jury verdict entered on May 30, 2002 is vacated. Judgment shall enter for the plaintiff in the amount of $207,000 with interest calculated thereon from June 5, 1998 to this date.

 Smith also brought a claim of retaliatory discharge which was dismissed on summary judgment.

 The special verdict questions separately addressed the plaintiffs commute and parking. The juiy concluded that the Phone Company did not fail to reasonably accommodate the plaintiff in these aspects of her claim.

 The plaintiff also moves to amend the judgment based in part on the amount of interest added to the award. This aspect of her motion is addressed herein.

 The defendants request that I reconsider the denial of the motion in limine to exclude the testimony of Dr. Silver. I do reconsider it and upon further reflection the testimony of Dr. Silver should have been excluded. Given the lateness of the challenge to Dr. Silver’s testimony on the eve of trial, the parties agreed that the court perform the gatekeeper function as the testimony was presented to the jury. Although not the recommended method (Commonwealth v. Curnin, 409 Mass. 218, 222 (1991)) if Dr. Silver’s testimony was struck from the jury’s consideration on the issue of causation the jury would nonetheless have decided the failure to accommodate claim relating to the 1993-99 period of time. I note that Dr. Silver as Smith’s treating physician was also presented as a fact witness as to the plaintiffs condition between 1996 and 1999 and there is, and was, no challenge to this aspect of her testimony.

 Dr. Silver provided no other details of these studies, including the methodology, the number of participants, the types of jobs, the level of accommodation, the dates, the degree of handicap, and the severity of the polio of the participants.

 It is undisputed that in 1954 at the age of two, Smith was severely afflicted with polio and it involved her ability to breathe, necessitating the use of an iron lung. The acute phase was followed by the necessity of a wheelchair, braces and later just crutches from 1959 to 1992. Smith has had numerous surgeries throughout her life relating to the debilitating affects of polio and later PPS. Many of the surgeries, such as spinal fusion, knee replacement, rotator cuff surgeries occurred between 1992 and 1999. In 1992, the plaintiff started using a motorized wheelchair outside the home and used crutches to make transfers from a manual wheelchair to her bed, to other pieces of furniture, to the toilet and to the shower. It is undisputed that she did not use a motorized wheelchair or scooter in her home.

 Dr. Silver made clear to the plaintiff that she must protect her arms, prevent falls, and keep current with all medical issues.

 I note that Dr. Silvers testimony on the adequacy of the home office related to an instance of lifting equipment and to the necessity of adequate office equipment at home to minimize the commute to the office.

 Although Dr. Silver mentioned reliance on two studies as a basis of her opinion, the testimony concerning the studies was so vague and scant in detail as to render her reliance meaningless in assessing the reliability of her opinion.

 Although Dr. Silver did provide some limited conclusoiy testimony that she considered aspects of the plaintiffs life other than the absence of work accommodations, much of this testimony was based on conjecture and speculation concerning the plaintiffs activities or was irrelevant.

 Altliough the defendants are entitled to judgment notwithstanding the verdict on the claim of total disability, I nonetheless address all the issues related to damages and interest on the future awards. I also consider the defendants’ request concerning damages, in part, as a motion for remittitur pursuant to Mass.R.Civ.P. 59.

 Adele Pollard is a registered nurse and a rehabilitation counselor with training and expertise in preparing life care plans for individuals with disabilities.

 The plaintiffs reliance on Franklin Publishing Co., Inc. v. MCAD, 25 Mass.App.Ct. 974, 974-75, is misplaced. While the court stated that interest for prior damages should be calculated from the date of filing the complaint with the MCAD, the plaintiffs case was resolved by the full Commission of the MCAD. The only additional complaint filed by the plaintiff was pursuant to a G.L.c. 30A appeal. Thus, the only appropriate filing date from which to calculate the prejudgment interest was the MCAD complaint. I do not read Franklin Publishing as legal precedent for calculating prejudgment interest from the date of the MCAD filing when the case has been resolved by a civil action for damages in the Superior Court.