## HALLMARK INSTITUTE OF PHOTOGRAPHY, INC., Plaintiff

v.

## COLLEGEBOUND NETWORK, LLC, Defendant.

### Civil Action No. 07–30067–MAP.

United States District Court,
D. Massachusetts.

Oct. 29, 2007.

Thomas A. Kenefick, III, Springfield, MA, for Plaintiff.

Michael C. Lynch, Kelley Drye & Warren LLP, New York, NY, Kathleen A. Rahbany, William R. Moorman, Craig & Macauley, P.C., Boston, MA, for Defendant.

### MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

(Dkt No. 10)

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff Hallmark Institute of Photography, Inc. ("Hallmark") has filed this suit against Defendant CollegeBound Network, LLC ("CollegeBound"), alleging that Defendant, an internet marketer, failed to live up to its oral representations regarding the results of its services. Plaintiff charged CollegeBound with material misrepresentation (Count I), breach of contract (Count II), fraud (Count III), negligent misrepresentation (Count IV), and violation of Mass. Gen. Laws ch. 93A (Count V).

Citing Fed.R.Civ.P. 12(b)(6), CollegeBound has moved to dismiss these claims, arguing that its oral representation was not an enforceable term of its contract with Hallmark and that its statements are not legally actionable as misrepresentations since they relate to future performance rather than present fact. For the reasons stated below, this motion will be allowed.

## II. FACTS

The following summary presents the facts in the light most favorable to the plaintiff, as required on a motion to dismiss under Rule 12(b)(6). *In re Cabletron Sys., Inc.,* 311 F.3d 11, 22 (1st Cir.2002).

Hallmark is a photography school that hired CollegeBound in early 2005 to provide internet marketing to potential students. Defendant offered to advertise the school on its websites, where prospective enrollees would be able to fill out a form requesting further information about Hallmark. CollegeBound would then pass that form on to Hallmark for the school to follow up with its own recruitment efforts.

During the parties' negotiations, Defendant represented to Plaintiff that three to seven percent of these requests for information, or "leads," would result in the actual enrollment of a student at Hallmark. Relying on this statement, Plaintiff entered into a written agreement with CollegeBound on March 29, 2005.

The agreement provided that Hallmark would pay a thirty dollar "Cost Per Lead Fee," defined as a payment "for each Unique Request for Information Form completed from a user coming from" any of CollegeBound's websites, with a "Unique Request for Information Form Completed" defined as "the completion of all required fields on the Partners Request for Information Form hosted on the CollegeBound network and its submission and transfer" to Hallmark. (Dkt. No. 1, Ex. 2 ¶ 1.) Plaintiff could then pursue these "leads" using its own marketing and informational materials.

Hallmark found the results of Defendant's services disappointing and conveyed its dissatisfaction to CollegeBound. Defendant responded by suggesting a new agreement, under which it would provide

more extensive marketing services for higher price per lead. Plaintiff signed a second contract on April 26, 2006 that so provided, with all other terms besides price and services remaining the same as in the first contract. (Dkt. No. 1, Ex. 3.)

Under these two agreements College-Bound forwarded a total of 5615 leads to Hallmark, of which only 35 resulted in active applicants to Plaintiff's educational program, a yield of less than one percent. Contending that this poor result breached Defendant's oral representations, Hallmark sued to recover its payments to CollegeBound.

## III. DISCUSSION

■ The court may allow a motion to dismiss only if the complaint, read in the light most favorable to the plaintiff, "presents a scenario that precludes recovery on any viable theory." *Garrett v. Tandy Corp.*, 295 F.3d 94, 97 (1st Cir.2002).

### A. Breach of Contract

Plaintiff contends that CollegeBound's promise of a three to seven percent enrollment yield from the candidates it referred to Hallmark should be considered a term of their contract, one that was breached by Defendant.

■ However, Plaintiff cannot surmount the barrier of the parol evidence rule, which prohibits the introduction of extrinsic evidence to alter the terms of an integrated and complete written contract. *Cambridgeport Sav. Bank v. Boersner*, 413 Mass. 432, 597 N.E.2d 1017, 1020 (1992).

Although neither of the contracts here contains an integration clause, other factors indicate they were intended to be the final embodiment of each agreement between the parties. The contracts contain all the essential terms of the respective agreements, and neither contract is facially ambiguous. Therefore, they must be viewed as integrated documents subject to the parol evidence rule. *Cf. Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1123 (1st Cir. 1995) (finding contract to be integrated where it contained all essential terms and "the face of the document contains nothing that would indicate that the parties did not intend it to be a complete and final expression of their rights and obligations"); *Robert Indus., Inc. v. Spence*, 362 Mass. 751, 291 N.E.2d 407, 409 (1973).

■ Under these circumstances, the terms of these contracts may not be varied by parol evidence unless they are somehow ambiguous. *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1261 (1st Cir.1991); *Keating v. Stadium Mgmt. Corp.*, 24 Mass.App.Ct. 246, 508 N.E.2d 121, 123 (1987). While Hallmark insists that the term "lead" is ambiguous, it is in fact clearly and consistently defined in both contracts as a completed "Request for Information" form. (Dkt. No. 1, Exs. 2, 3.) Accordingly, CollegeBound fulfilled all its duties as outlined in these written agreements by marketing Hallmark on its websites and transmitting the resulting leads to Hallmark.[1]

### B. Misrepresentation–Related Claims

■ Plaintiff's claims for material misrepresentation, fraud, and negligent

---

1. Plaintiff also alleges that CollegeBound violated their agreements by failing to do a workmanlike job in its internet marketing and breaching the implied covenant of good faith and fair dealing. However, both of these duties relate to performance of the express promises contained in the contract itself, and the complaint offers no allegation that Defendant was lacking in rendering the marketing efforts explicitly promised in the contract. *See Abrams v. Factory Mut.Liability Ins. Co.*, 298 Mass. 141, 10 N.E.2d 82, 84 (1937); *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 805 N.E.2d 957, 964, 966 (2004).

misrepresentation all require, among their other elements, that Hallmark demonstrate that CollegeBound made a false misrepresentation of a material fact. *See RP Mach. Enters. v. UPS Capital Bus. Credit*, No. 05–40200, 2007 WL 2475871, at *4–5, 2007 U.S. Dist. LEXIS 63823, at *14 (D.Mass. Aug. 29, 2007); *Barrett Assocs., Inc. v. Aronson*, 346 Mass. 150, 190 N.E.2d 867, 868 (1963); *Mass. Sch. of Law v. Am. Bar Ass'n*, 142 F.3d 26, 41 (1st Cir.1998). Defendant may not be held liable if the representation "concerned a matter of opinion, estimate or judgment, which was not susceptible of actual knowledge at the time of its utterance." *Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F.Supp. 1188, 1199 (D.Mass.1990). Where a statement is of a "fundamentally predictive nature," a defendant cannot be said to be making a representation regarding any present fact that the plaintiff can then reasonably rely on.[2] *See id.* at 1202.

■ Such is the case here. Though there are certain exceptions to this general rule, *see Briggs v. Carol Cars, Inc.*, 407 Mass. 391, 553 N.E.2d 930, 933 (1990); *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 575 N.E.2d 70, 74 (1991), they do not apply where Defendant simply could not have known when it made its prediction regarding enrollment yield what the results of its marketing and Plaintiff's follow-up would actually be. *See Liberty Leather Corp. v. Callum*, 653 F.2d 694, 698 (1st Cir.1981). CollegeBound's alleged estimate of a three to seven percent yield was a classic matter of "estimate or judgment" that could not form the basis for any misrepresentation or fraud claim.

Exceptions to the general rule banning these claims have been applied only where the defendant *did* know some present fact belying its prediction regarding the future at the time it made the representation. There is no allegation here that CollegeBound knew, or even could have known, that its prediction was untrue when it made the statement regarding yield to Hallmark. *See Brewster Wallcovering Co. v. Blue Mt. Wallcoverings, Inc.*, 68 Mass. App.Ct. 582, 864 N.E.2d 518, 537 (2007) (finding only one of three of defendant's promises about future services to be actionable where only as to that representation did defendant know *at the time he made the statement* that his prediction was false).

### C. Chapter 93A

Hallmark's claim under Chapter 93A must be dismissed since it has failed to establish any breach of contract, misrepresentation, or other actionable conduct by CollegeBound. *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 25 (1st Cir.2001) (no such claim where "no deceitful or even negligently false statements" by defendant); *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 56 (1st Cir.2007) (even if demonstrated, mere breach of contract cannot be basis of Chapter 93A claim between two businesses).

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. No. 10) is hereby ALLOWED. Discovery as to CollegeBound's counterclaim for payment under the agreements will be conducted in accordance with the pretrial scheduling order issued by the court on October 10, 2007. (Dkt. No. 19.)

It is So Ordered.

---

**2.** The general exemption of representations regarding the future in part reflects the difficulty such statements create in weighing the "reasonable reliance" element of misrepresentation claims. *See Liberty Leather Corp. v. Callum*, 653 F.2d 694, 698 (1st Cir.1981).