CONGREGATION KADIMAH TORAS-MOSHE vs. ROBERT A.
DeLeo, administrator.[1]

Suffolk.  March 7, 1989. — July 11, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Contract*, What constitutes, Consideration. *Charity*.

An oral promise to give twenty-five thousand dollars was not an enforceable
contract where it was not supported either by consideration or by reliance
by the promisee [366-368]; furthermore, to enforce such a promise
against the promisor's estate would be against public policy [368].

CIVIL ACTION commenced in the Superior Court Department
on July 31, 1986.

The case was heard by *Elbert Tuttle*, J., on a motion for
summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*Andrew M. Fischer* for the plaintiff.
*Ralph R. Bagley* for the defendant.

LIACOS, C.J. Congregation Kadimah Toras-Moshe (Con-
gregation), an Orthodox Jewish synagogue, commenced this
action in the Superior Court to compel the administrator of an
estate (estate) to fulfil the oral promise of the decedent to give
the Congregation $25,000. The Superior Court transferred the
case to the Boston Municipal Court, which rendered summary
judgment for the estate. The case was then transferred back
to the Superior Court, which also rendered summary judgment
for the estate and dismissed the Congregation's complaint. We
granted the Congregation's application for direct appellate re-
view. We now affirm.

[1] Of the estate of Saul Schwam.

The facts are not contested. The decedent suffered a pro-
longed illness, throughout which he was visited by the Congre-
gation's spiritual leader, Rabbi Abraham Halbfinger. During
four or five of these visits, and in the presence of witnesses,
the decedent made an oral promise to give the Congregation
$25,000. The Congregation planned to use the $25,000 to
transform a storage room in the synagogue into a library named
after the decedent. The oral promise was never reduced to
writing. The decedent died intestate in September, 1985. He
had no children, but was survived by his wife.

The Congregation asserts that the decedent's oral promise
is an enforceable contract under our case law, because the
promise is allegedly supported either by consideration and bar-
gain, or by reliance. See *Loranger Constr. Corp.* v. *E.F.
Hauserman Co.*, 376 Mass. 757, 761, 763 (1978) (distinguish-
ing consideration and bargain from reliance in the absence of
consideration). We disagree.

The Superior Court judge determined that "[t]his was an
oral gratuitous pledge, with no indication as to how the money
should be used, or what [the Congregation] was required to
do if anything in return for this promise." There was no legal
benefit to the promisor nor detriment to the promisee, and thus
no consideration. See *Marine Contractors Co.* v. *Hurley*, 365
Mass. 280, 286 (1974); *Gishen* v. *Dura Corp.*, 362 Mass.
177, 186 (1972) (moral obligation is not legal obligation).
Furthermore, there is no evidence in the record that the Con-
gregation's plans to name a library after the decedent induced
him to make or to renew his promise. Contrast *Allegheny
College* v. *National Chautauqua County Bank*, 246 N.Y. 369,
377-379 (1927) (subscriber's promise became binding when
charity implicitly promised to commemorate subscriber).

As to the lack of reliance, the judge stated that the Congre-
gation's "allocation of $25,000 in its budget[,] for the purpose
of renovating a storage room, is insufficient to find reliance
or an enforceable obligation." We agree. The inclusion of the
promised $25,000 in the budget, by itself, merely reduced to
writing the Congregation's expectation that it would have addi-
tional funds. A hope or expectation, even though well founded, is

not equivalent to either legal detriment or reliance.[2] *Hall* v. *Horton House Microwave, Inc.*, 24 Mass. App. Ct. 84, 94 (1987).

The Congregation cites several of our cases in which charitable subscriptions were enforced. These cases are distinguishable because they involved written, as distinguished from oral, promises and also involved substantial consideration or reliance. See, e.g., *Trustees of Amherst Academy* v. *Cowls*, 6 Pick. 427, 434 (1828) (subscribers to written agreement could not withdraw "after the execution or during the progress of the work which they themselves set in motion"); *Trustees of Farmington Academy* v. *Allen*, 14 Mass. 172, 176 (1817) (trustees justifiably "proceed[ed] to incur expense, on the faith of the defendant's subscription").[3] Conversely, in the case of *Cottage St. Methodist Episcopal Church* v. *Kendall*, 121 Mass. 528

---

[2] "We do not use the expression 'promissory estoppel,' since it tends to confusion rather than clarity." *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 761 (1978).

[3] The Congregation cites two cases for the proposition that Massachusetts requires so little consideration or reliance that, in practice, none is required. The Congregation misconstrues each case.

The Congregation interprets this court's opinion in *Robinson* v. *Nutt*, 185 Mass. 345 (1904), to state the principle that the promises of several subscribers to donate funds are interdependent, that each promise is "consideration" or "reliance" for the other, and that each subscription is therefore an enforceable contract. This interpretation is neither the reasoning of the case nor good law in Massachusetts. The court in *Robinson* decided that the financial duties imposed on the charity therein, and adhered to by the charity for five years, were consideration for the promised funds. *Id.* at 348-349. The principle to which the Congregation refers, on the other hand, had been repudiated by this court in *Cottage St. Methodist Episcopal Church* v. *Kendall*, 121 Mass. 528, 530 (1877).

The second case cited by the Congregation, *In re Morton Shoe Co.*, 40 Bankr. 948 (D. Mass. 1984), is not controlling, and is in any event distinguishable. That case involved an organized campaign of solicitation and significant reliance by the charity therein. "After the pledge drive, [the charity] establishe[d] an operating budget, determine[d] the amount of and recipients of distributions, and hire[d] personnel. In addition, based on the estimated amount of subscriptions, [the charity] borrow[ed] money from banks so that it [could] make immediate distributions to recipients before obtaining the actual pledge amount." *Id.* at 949. Thus, even assuming this case to have some precedential value, it demonstrates the need for reliance or consideration, not the opposite.

(1877), we refused to enforce a promise in favor of a charity where there was no showing of any consideration or reliance.

The Congregation asks us to abandon the requirement of consideration or reliance in the case of charitable subscriptions. The Congregation cites the Restatement (Second) of Contracts § 90 (1981), which provides, in subsection (2): "A charitable subscription . . . is binding under Subsection (1) without proof that the promise induced action or forbearance." Subsection (1), as modified in pertinent part by subsection (2), provides: "A promise ·which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person . . . is binding if injustice can be avoided only by enforcement of the promise. . . ."

Assuming without deciding that this court would apply § 90, we are of the opinion that in this case there is no injustice in declining to enforce the decedent's promise. Although § 90 dispenses with the absolute requirement of consideration or reliance, the official comments illustrate that these are relevant considerations. Restatement (Second) of Contracts, *supra* at § 90 comment f. The promise to the Congregation is entirely unsupported by consideration or reliance.[4] Furthermore, it is an oral promise sought to be enforced against an estate. To enforce such a promise would be against public policy.[5]

*Judgment affirmed.*

---

[4] We need not decide whether we would enforce an oral promise where there was a showing of consideration or reliance.

[5] The defendant argues that, if the decedent was aware of impending death, yet made no gift during life, then the promise is in the nature of a promise to make a will, which is unenforceable, by virtue of the Statute of Frauds. See G. L. c. 259, §§ 5, 5A (1986 ed.). Under the view we take, we need not consider this argument.