# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September 2019 Term**

_____

**No. 18-0384**

_____

**FILED**

**November 19, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**GOLDEN EAGLE RESOURCES, II, L.L.C.,**
**Defendant Below, Petitioner**

**v.**

**WILLOW RUN ENERGY, L.L.C.,**
**Plaintiff Below, Respondent**

_____

**Appeal from the Circuit Court of Pleasants County**
**The Honorable Timothy Sweeney, Judge**
**Civil Action No. 16-C-14**

**REVERSED AND REMANDED**
_____

**Submitted: October 15, 2019**
**Filed: November 19, 2019**

**Manmeet Waila,** _pro hac vice_
**Siltstone Capital, LLC**
**Houston, Texas**

**Christopher Brumley, Esq.**
**Richard R. Marsh, Esq.**
**Flaherty Sensabaugh Bonasso PLLC**
**Charleston, West Virginia**
**Counsel for the Petitioner**

**M. Paul Marteney, Esq.**
**Parkersburg, West Virginia**
**Counsel for the Respondent**

**JUSTICE HUTCHISON delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syllabus Point 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

2. "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syllabus Point 1, *W.Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc*., 238 W.Va. 465, 796 S.E.2d 574 (2017).

3. Under the West Virginia Revised Uniform Arbitration Act, West Virginia Code § 55-10-8(a) (2015), a written agreement to submit to arbitration any controversy between the parties to the agreement is valid, enforceable, and irrevocable, unless the agreement is found to be invalid, unenforceable, or revocable upon a ground that exists at law or in equity for the revocation of any contract.

4. When a trial court is required to rule upon a motion to compel or stay arbitration, the West Virginia Revised Uniform Arbitration Act, West Virginia Code § 55-10-8(b) (2015), limits the authority of the trial court to determining whether a litigant has established: (1) the existence of a valid, enforceable agreement to arbitrate between the parties; and (2) that the parties' controversy falls within the substantive scope of that agreement to arbitrate.

i

5.       Parties may agree to submit to arbitration questions concerning clouds on the title to any estate, right, or interest in real property, despite West Virginia Code § 51-2-2(d) (2017) vesting circuit courts with jurisdiction to resolve those same questions.

6.       The West Virginia Revised Uniform Arbitration Act, West Virginia Code § 55-10-8(a) (2015), requires that if a lawsuit presents multiple claims, some subject to an arbitration agreement and some not, the former claims must be sent to arbitration – even if this will lead to piecemeal litigation.  A trial court may not issue a blanket refusal to compel arbitration of some of a party's claims, merely because the party has other claims that are not subject to the arbitration agreement, or because other parties in the lawsuit are not subject to the arbitration agreement.

**HUTCHISON, Justice**:

In this appeal from the Circuit Court of Pleasants County, we address a simple question: may individuals agree to arbitrate a dispute regarding a cloud on the title to real estate? We hold that they may.

As we discuss below, the circuit court decided otherwise and refused to enforce an arbitration agreement. We reverse the circuit court's decision and remand the case with directions that the circuit court enforce the agreement to arbitrate the parties' real estate dispute.

## I. Factual and Procedural Background

This case involves the conveyance of an interest in real estate, specifically, ownership interests in minerals. Plaintiff Willow Run Energy, L.L.C. ("Willow Run"), owned 1,856.281 acres of mineral interests. In early 2015, defendant Golden Eagle Resources, II, L.L.C. ("Golden Eagle"), sought to buy a share of those mineral interests.

On March 17, 2015, Willow Run and Golden Eagle entered into an eleven-page contract whereby Willow Run would convey 944.131 acres of mineral interests to Golden Eagle in exchange for $3.9 million.[1] Additionally, the parties' March 2015 contract

---

[1] Willow Run is apparently owned by John P. Riggs and Brenda J. Riggs. The Riggs also signed the contract as individuals.

contained an arbitration clause that required the parties to refer any dispute about the parties' performance of the contract to an arbitrator.[2]

After the parties signed the March 2015 contract, the parties agree that a dispute arose concerning defects in the title to the mineral interests.

Willow Run and Golden Eagle subsequently entered into a new, two-page agreement, the agreement that is the subject of this case. On July 24, 2015, the parties signed a "Letter Agreement Bill of Sale," wherein Willow Run agreed to convey to Golden Eagle 220.5 net acres of mineral rights. The parties stated that their new agreement was "subject to the terms and conditions" of their earlier, March 2015 contract. The parties concede that the July 2015 agreement incorporates the arbitration clause agreed to by the parties in the March 2015 contract.

The July 2015 agreement contains a statement that "[t]here is a cloud on [the] title" of Willow Run's mineral estate and goes on to specify a payment formula to account

---

[2] The arbitration clause provided:

> In the event of a disagreement between the Parties concerning this Agreement or performance thereunder, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be the exclusive remedy and cover all disputes, including but not limited to, the formation, execution, validity and performance of this Agreement. All fees and costs associated with the arbitration shall be shared by the Buyer and the Seller.

for that title defect. The contract provides that Golden Eagle would eventually pay a total price of $537,597.38 for the 220.5 net acres of mineral interests. However, because of the title defect, the parties agreed that Golden Eagle "shall hold a reserve of $221,363.62 ('Reserve') . . . until the cloud on title . . . has been cured, at which point, [Golden Eagle] will release the Reserve to [Willow Run] less any costs required to cure said cloud on title."

Willow Run delivered a deed for the subject mineral interests, and Golden Eagle promptly recorded the deed with the county clerk. The record suggests that discussions continued between Willow Run and Golden Eagle, but that the parties reached an impasse regarding whether the cloud on the title to the mineral interests had been cured. Golden Eagle insisted that Willow Run was responsible for removing the cloud and had failed to do so. Golden Eagle therefore refused to pay the remaining $221,363.62 due under the July 2015 agreement.

On April 8, 2016, Willow Run filed a complaint against Golden Eagle in the Circuit Court of Pleasants County. Willow Run asserted three causes of action. First, it alleged that Golden Eagle had breached the July 2015 agreement. Second, it asserted that Golden Eagle was unjustly enriched because it accepted the deed to the mineral interests, but failed to pay the "agreed-upon price for the subject property." Third, Willow Run asked the circuit court for a declaratory judgment to determine whether a cloud still exists on the title to the mineral interests at issue.

3

Defendant Golden Eagle promptly responded by filing a motion to dismiss the complaint and to compel the parties to arbitrate. Golden Eagle argued to the circuit court that the parties' contracts contained an unambiguous arbitration provision that specifically covers disputes regarding Golden Eagle's performance under the July 2015 agreement. It therefore asked the circuit court to dismiss Willow Run's complaint, and to enter an order compelling Willow Run to arbitrate according to the process spelled out in the parties' contracts.

In January 2018, twenty-one months after filing suit, plaintiff Willow Run moved to amend its complaint. Willow Run sought permission to add several new defendants to the case, defendants that might have been operating an oil and gas well on Willow Run's property interests since the 1980s and might have created a cloud on Willow Run's title. None of these new defendants was a signatory to any contract between Golden Eagle and Willow Run. Willow Run's proposed amended complaint sought a declaratory judgment clarifying that none of the new defendants had an ownership right to the disputed mineral interests purchased by Golden Eagle.[3]

Golden Eagle again promptly responded to Willow Run's motion. Golden Eagle asked the circuit court to deny the motion to amend the complaint. More importantly,

---

[3] The new defendants include Fuel Management Services, Inc.; Gerald L. Shipley; Lippizan Petroleum, Inc.; Bald Eagle Oil & Gas, Inc.; Beebob Energy, LLC, a.k.a. Sun Valley Oil and Gas, LLC; and Robert Matthey, Jr.

4

Golden Eagle again asked the circuit court to refer its dispute with Willow Run to arbitration.

In an order dated March 28, 2018, the circuit court granted Willow Run's motion to amend its complaint to add the new defendants and claims.

However, the circuit court refused Golden Eagle's motion to refer Willow Run's claims against Golden Eagle to arbitration. The circuit court found that "the arbitration clause contained in the . . . [parties'] Agreement is valid[.]" Nevertheless, the circuit court found the claims against Golden Eagle fell outside the scope of the arbitration clause for two reasons. First, West Virginia Code § 51-2-2(d) (2017) grants circuit courts jurisdiction "to remove any cloud on the title to real property, or any part of a cloud, or any estate, right or interest in the real property[.]" Because of this statute, the circuit court concluded that "[a]s a matter of public policy, property rights are not subject to arbitration" and that "the actual dispute relates back to an issue over which no arbitrator would have jurisdiction[.]" Second, the circuit court found that the new defendants added by Willow Run's amended complaint were necessary parties to the full resolution of the dispute. However, those new defendants were not a party to the Willow Run–Golden Eagle arbitration agreements, and thus, could not be compelled to participate in an arbitration proceeding. The circuit court concluded, therefore, that it could not compel Willow Run to arbitrate its claims against Golden Eagle.

Golden Eagle now appeals that part of the circuit court's March 28, 2018, order denying its motion to compel Willow Run to arbitrate its dispute against Golden Eagle.

## II. Standard of Review

"An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. pt. 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

We review the circuit court's order *de novo*. "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. pt. 1, *W.Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W.Va. 465, 796 S.E.2d 574 (2017). Additionally, to the extent we are required to examine the circuit court's interpretation of the parties' written agreements, this Court applies a *de novo* review. *Zimmerer v. Romano*, 223 W.Va. 769, 777, 679 S.E.2d 601, 609 (2009) (per curiam) ("[W]e apply a *de novo* standard of review to the circuit court's interpretation of the contract."); Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999) ("The interpretation of an insurance contract . . . is a legal determination that . . . shall be reviewed *de novo* on appeal."). Lastly, because the circuit court's decision relied on the interpretation of a statute, our review is *de novo*. Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III. Discussion

Defendant Golden Eagle assigns two errors to the circuit court's order. First, Golden Eagle asserts the circuit court erred in finding that West Virginia's law or public policy prohibits submitting disputes about title to real property to arbitration. Second, Golden Eagle asserts the circuit court erred in refusing to refer the dispute between Willow Run and Golden Eagle to arbitration, because Willow Run's amended complaint added new defendants to the lawsuit who were not parties to the arbitration agreements. We agree with Golden Eagle on both of these points.

Golden Eagle contends that the West Virginia Revised Uniform Arbitration Act ("the Arbitration Act") controls this case. *See* W.Va. Code §§ 55-10-1 to -33 (2015).[4] The Arbitration Act governs any "agreement to arbitrate made on or after July 1, 2015." W.Va Code § 55-10-5(a) (2015). The agreement at issue in this case was signed by the parties on July 24, 2015, and is therefore within the ambit of the Arbitration Act.

---

[4] Golden Eagle also asserts that the case is controlled by the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16 ("the FAA"). The FAA requires proof of a transaction affecting interstate commerce; the West Virginia Arbitration Act does not. *See* Syl. pt. 6, *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011), *vacated on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012) ("Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that *evidences a transaction affecting interstate commerce* is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract." (Emphasis added)). Because of this additional factor, we need not reach the question of whether the FAA governs this case.

7

The Arbitration Act recognizes that arbitration is simply a matter of contract between the parties, and is a way to resolve those disputes (but only those disputes) that the parties have properly agreed to submit to arbitration. W.Va. Code § 55-10-2 (2015) (declaring legislative policy encouraging arbitration). The Arbitration Act provides:

> An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

W.Va. Code § 55-10-8(a) (2015). The phrase "agreement contained in a record" means that, in some manner, the initial arbitration agreement must be in writing, and must be agreed to by the parties.[5]

---

[5] The Arbitration Act defines a "record" as "information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form." W.Va. Code § 55-10-3 (2015). "More than a piece of paper is contemplated by the [Arbitration Act's] use of the broader term *record* . . . Drawn from the Uniform Commercial Code, a record includes electronic evidence from business and governmental transactions." Thomas H. Oehmke, Joan M. Brovins, *Binding Nonsignatories to Arbitration – Beware of Foot in Door*, 127 Am.Jur. Trials 107 (2012). *See*, *e.g.*, *Lane v. Urgitus*, 145 P.3d 672, 679-80 (Colo. 2006) (dispute between two realtors over property sale must be submitted to arbitration, because both realtors were members of a professional organization with a membership agreement (that is, a "record") that required arbitration between members).

The Revised Uniform Arbitration Act ("RUAA") (upon which the Legislature based West Virginia's Arbitration Act) was drafted and adopted by the National Conference of Commissioners on Uniform State Laws in 2000. The reporter's comments to the RUAA note that while this section (Section 6(a) of the RUAA and W.Va. Code § 55-10-8(a)) requires arbitration agreements to initially be in writing, those written agreements can be modified orally:

8

Stated simply, we hold that under the West Virginia Revised Uniform Arbitration Act, West Virginia Code § 55-10-8(a) (2015), a written agreement to submit to arbitration any controversy between the parties to the agreement is valid, enforceable, and irrevocable, unless the agreement is found to be invalid, unenforceable, or revocable upon a ground that exists at law or in equity for the revocation of any contract.

When a party to an arbitration agreement makes a motion to compel arbitration in a case, the authority of the trial court to proceed is constrained. In the context of cases affected by the Federal Arbitration Act, we have found that courts are limited to

> This [section] follows both the [former Uniform Arbitration Act] and [Federal Arbitration Act] requirements that arbitration agreements be in writing. However, a subsequent, oral agreement about terms of an arbitration contract is valid. This position is in accord with the unanimous holding of courts that a written contract can be modified by a subsequent, oral arrangement provided that the latter is supported by valid consideration. *Premier Technical Sales, Inc. v. Digital Equip. Corp.*, 11 F. Supp. 2d 1156 (N.D. Cal. 1998); *Cambridgeport Savings Bank v. Boersne*r, 413 Mass. 432, 597 N.E.2d 1017 (1992); *Pellegrene v. Luther*, 403 Pa. 212, 169 A.2d 298 (1961); *Pacific Dev., L.C. v. Orton*, 982 P.2d 94 (Utah App. 1999). Indeed it is typical in the arbitration context, for many parties to have only a short statement in their contracts concerning the resolution of disputes by arbitration, and perhaps a reference to the rules of an arbitration organization. It is oftentimes only after the initial arbitration agreement is written and when a dispute arises that the parties enter into more detailed agreements as to how their arbitration process will work. Such subsequent understandings, whether oral or written, are part of the arbitration agreement.

National Conference of Commissioners on Uniform State Laws, *Revised Uniform Arbitration Act*, Section 6, cmt. 1 (2000) *in* Bette J. Roth, Randall W. Wulff, Charles A. Cooper, 2 *Alternative Dispute Resolution Practice Guide*, Appendix II-13 (2008).

weighing only two questions: does a valid arbitration agreement exist? And do the claims at issue in the case fall within the scope of the arbitration agreement? As we held in Syllabus Point 2 of *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010):

> When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement

The West Virginia Revised Uniform Arbitration Act similarly limits the authority of trial courts. West Virginia Code § 55-10-9 (2015) permits a party to file a motion to either compel or stay arbitration. West Virginia Code § 55-10-8(b) provides that when such a motion is filed, "The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." This latter section of the Arbitration Act is "intended to incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act] that, in the absence of an agreement to the contrary, issues of substantive arbitrability, i.e., whether a dispute is encompassed by an agreement to arbitrate, are for a court to decide[.]" National Conference of Commissioners on Uniform State Laws, *Revised Uniform Arbitration Act*, Section 6, cmt. 4 (2000) *in* Bette J. Roth, Randall W. Wulff, Charles A. Cooper, 2 *Alternative Dispute Resolution Practice Guide*, Appendix II-13 (2008).

10

We therefore hold that when a trial court is required to rule upon a motion to compel or stay arbitration, the West Virginia Revised Uniform Arbitration Act, West Virginia Code § 55-10-8(b) (2015), limits the authority of the trial court to determining whether a litigant has established: (1) the existence of a valid, enforceable agreement to arbitrate between the parties; and (2) that the parties' controversy falls within the substantive scope of that agreement to arbitrate.[6]

[6] We emphasize, however, that this process is altered if the parties have added a "delegation provision" to their arbitration agreement. Under the Federal Arbitration Act, 9 U.S.C. § 2, and the West Virginia Revised Uniform Arbitration Act, W.Va. Code § 55-10-8(a), parties may agree to "delegate" questions about the validity, revocability, and enforceability of an arbitration agreement away from the circuit court and to an arbitrator. *See* Syl. pt. 4, *Schumacher Homes of Circleville, Inc. v. Spencer*, 237 W. Va. 379, 787 S.E.2d 650 (2016) ("A 'delegation provision' is a clause, within an agreement to arbitrate, which clearly and unmistakably provides that the parties to the agreement give to the arbitrator the power to decide the validity, revocability or enforceability of the arbitration agreement under general state contract law."). We found in *Schumacher Homes* that if an arbitration agreement contains a delegation provision, then the parties cannot initially challenge the arbitration agreement in the circuit court. Instead, the parties must first challenge the validity, revocability or enforceability of the delegation provision; only if the circuit court finds the delegation provision unenforceable may it then proceed to weigh the arbitration agreement. We said in Syllabus Points 5 and 7 of *Schumacher Homes* that:

> 5. Under the Federal Arbitration Act, 9 U.S.C. § 2, and the doctrine of severability, where a delegation provision in a written arbitration agreement gives to an arbitrator the authority to determine whether the arbitration agreement is valid, irrevocable or enforceable under general principles of state contract law, a trial court is precluded from deciding a party's challenge to the arbitration agreement. When an arbitration agreement contains a delegation provision, the trial court must first consider a challenge, under general principles of state law applicable to all contracts, that is directed at the

11

There is no dispute in this case regarding whether Golden Eagle and Willow Run have a valid, enforceable arbitration agreement. The parties' July 2015 letter agreement indisputably incorporates the arbitration clause contained in the parties' March 2015 contract. Moreover, the circuit court concluded that the arbitration agreement was valid and enforceable. Because a valid, enforceable arbitration agreement exists between

validity, revocability or enforceability of the delegation provision itself.

7. Under the Federal Arbitration Act, 9 U.S.C. § 2, there are two prerequisites for a delegation provision to be effective. First, the language of the delegation provision must reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration agreement to an arbitrator. Second, the delegation provision must itself be valid, irrevocable and enforceable under general principles of state contract law.

*Schumacher Homes*, 237 W.Va. at 383, 787 S.E.2d at 654.

We also note that West Virginia Code § 55-10-8(c) requires that every "decision as to whether the arbitration agreement is enforceable shall be made by a court of competent jurisdiction" regardless of what the parties may have otherwise agreed. As we said in *Schumacher Homes*, 237 W. Va. at 389 n. 28, 787 S.E.2d at 660 n. 28, in some circumstances, this paragraph might be preempted by federal law:

As to contracts affecting interstate commerce, Section 8(c) appears to conflict with the Supreme Court's holdings that any state statute which impedes an arbitration agreement and targets it for treatment not usually applied to other kinds of contracts is preempted by the FAA. Under the holdings of the United States Supreme Court, Section 8(c) may be preempted by the FAA if an arbitration agreement contains a valid and enforceable delegation clause.

The agreements between Willow Run and Golden Eagle do not contain a delegation provision.

12

the parties, we focus on the second part of the required analysis: does the parties' controversy fall within the substantive scope of that arbitration agreement?

As noted earlier, for two reasons, the circuit court found the parties' dispute was outside of the scope of the arbitration agreement: the circuit court found that only a circuit court has jurisdiction to resolve clouds on title, and the cloud on title alleged here could only be resolved with the involvement of defendants that were not signatories to the arbitration agreement. We find neither of these reasons is sufficient to disregard the parties' valid, enforceable arbitration contract.

As to the first reason, the circuit court ruled that, "[a]s a matter of public policy, property rights are not subject to arbitration." The circuit court based this finding on a statute that creates jurisdiction for circuit courts, and provides:

> The circuit court shall have original and general jurisdiction in all cases in equity, including jurisdiction in equity to remove any cloud on the title to real property, or any part of a cloud, or any estate, right or interest in the real property, and to determine questions of title with respect to the real property without requiring allegations or proof of actual possession of the real property.

13

W.Va. Code § 51-2-2(d) (2017).[7] Golden Eagle correctly argues, however, that this statute does not give the circuit courts *exclusive* or *sole* authority over real property disputes. Those limiting terms are not contained in the jurisdiction statute.

Moreover, the Arbitration Act does not exclude real property disputes from the realm of arbitration. To the contrary, the Arbitration Act allows parties to submit to arbitration "*any* existing or subsequent controversy arising between the parties[.]" W.Va. Code § 55-10-8(a) (emphasis added). It is a fundamental rule of statutory construction that "the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning." *State ex rel. Johnson v. Robinson*, 162 W. Va. 579, 582, 251 S.E.2d 505, 508 (1979). The Legislature's use of the word "any" in West Virginia Code § 55-10-8(a) is not superfluous language, but was intended to mean that parties may craft binding arbitration agreements to cover disputes of whatever kind they may choose.

Various authorities have concluded that parties may enter into contracts to arbitrate real property disputes. *Williston on Contracts* provides that, "In the absence of a statute to the contrary, both personal and real property questions may be arbitrated." Richard A. Lord, 21 *Williston on Contracts* § 57:29 (4th ed. 2017). Similarly, *American Jurisprudence* has concluded that disputes regarding real estate may be arbitrated: "Where a[n arbitration] statute validates written agreements to submit any controversy between the

---

[7] Effective July 7, 2017, the Legislature amended W.Va. Code § 51-2-2 to raise the jurisdictional limit on amounts in controversy. The amendment has no effect on this case.

parties to arbitration, a controversy involving title to real property is included in the term 'any controversy.'" 4 Am. Jur. 2d, *Alternative Dispute Resolution* § 39 (2018). The leading case cited by most authorities comes from the California Court of Appeals, which concluded:

> According to modern authority, there is no reason why controversies affecting real property may not be authorized to be submitted to arbitration by written agreements of the parties involved. . . . It is now well settled that, in the absence of statutory restrictions, contests or disputes as to the title to, or interests in, real estate may be submitted to arbitration.

*Snyder v. Superior Court in & for Amador Cty.*, 24 Cal. App. 2d 263, 266, 74 P.2d 782, 784 (1937) (citations and quotations omitted).

Additionally, it is indisputable that the parties in this case could, if they so choose, enter into a contractual settlement of their dispute. The parties could contractually resolve their controversy regarding title to the real estate interests, and any circuit court would be obliged to enforce that contract. The arbitration clause at issue in this case is likewise a contractual means for resolving the parties' controversy. Any award by an arbitrator is enforceable in circuit court. *See* W.Va. Code §§ 55-10-24 (confirming an arbitrator's award) and -27 (requiring a court to enter judgment on an arbitrator's award) (2015).

We therefore hold that parties may agree to submit to arbitration questions concerning clouds on the title to any estate, right, or interest in real property, despite West

15

Virginia Code § 51-2-2(d) (2017) vesting circuit courts with jurisdiction to resolve those same questions. The circuit court erred in holding otherwise.

The second reason the circuit court refused to compel plaintiff Willow Run and defendant Golden Eagle to arbitrate their dispute was the presence in the case of non-signatories to the arbitration agreement. As noted earlier, the circuit court permitted Willow Run to amend its complaint and add new defendants to the case. While these new defendants are the alleged cause of the cloud on title, none of these defendants is a party to, or signatory on, the July 2015 agreement and its arbitration clause.

Arbitration is usually perceived as a simple, two-party dispute-resolution mechanism based upon contractual assent. This perception begins to fray, however, when multiple parties are involved in a controversy, with some parties bound by one or more arbitration agreements and some not bound by any agreement. Questions arise and confusion abounds regarding how a court is to give all of the parties a fair hearing of their grievances, while simultaneously meeting the requirement of the Federal Arbitration Act and the West Virginia Revised Uniform Arbitration Act that courts enforce valid arbitration agreements without any regard for the consequences.

In this case, no party contends that the non-signatory defendants must submit to arbitration. This is well, because "[a] party generally cannot be forced to participate in an arbitration proceeding unless the party has, in some way, agreed to participate." *Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W.Va. 421, 439, 781 S.E.2d 198, 216

16

(2015). As a general rule, "[a] court may not direct a nonsignatory to an agreement containing an arbitration clause to participate in an arbitration proceeding absent evidence that would justify consideration of whether the nonsignatory exception to the rule requiring express assent to arbitration should be invoked." Syllabus Point 3, *State ex rel. United Asphalt Suppliers, Inc. v. Sanders,* 204 W.Va. 23, 511 S.E.2d 134 (1998).[8]

Instead, Willow Run argued (and the circuit court agreed) that no part of this case can be arbitrated because the controversy between Willow Run and Golden Eagle is too intertwined with the controversy involving the non-signatory defendants. Essentially, the circuit court avoided the problems that could arise from "piecemeal" litigation, and determined that judicial economy required that Willow Run's arbitrable claims against Golden Eagle be litigated in the circuit court alongside the non-arbitrable claims against the new defendants.

---

[8] In Syllabus Point 10 of *Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W.Va. at 426, 781 S.E.2d at 203, we recognized five limited circumstances where a non-signatory might be compelled to participate in arbitration:

> A signatory to an arbitration agreement cannot require a non-signatory to arbitrate unless the non-signatory is bound under some traditional theory of contract and agency law. The five traditional theories under which a signatory to an arbitration agreement may bind a non-signatory are: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.

The parties have not suggested any of these circumstances exist in this case.

We rejected a similar ruling by a circuit court in *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W.Va. 486, 729 S.E.2d 808 (2012). There, we concluded, "the circuit court's orders are eminently reasonable, logical and just. They are also, unfortunately, directly contrary to the United States Supreme Court's interpretations of the Federal Arbitration Act." 229 W.Va. at 497, 729 S.E.2d at 819. We went on to explain that the Federal Arbitration Act ("the FAA") *requires* inefficient, fragmented, piecemeal resolution of arbitrable and non-arbitrable claims:

> The Supreme Court has interpreted the FAA to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation. A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration. As early as 1983, the Supreme Court concluded that the FAA *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the [Federal] Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement. In 1985, the Supreme Court emphasized that the FAA requires a court to enforce the bargain of the parties to arbitrate and not substitute its own views of economy and efficiency for those of Congress. A court is therefore required to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.

229 W.Va. at 497, 729 S.E.2d at 819 (footnotes, citations and quotations omitted). We went on to hold, in Syllabus Point 9 of *State ex rel. Johnson Controls v. Tucker*, that signatories to an arbitration agreement cannot be deprived of their right to arbitration:

> The Federal Arbitration Act, 9 U.S.C. § 2, requires that if a lawsuit presents multiple claims, some subject to an arbitration agreement and some not, the former claims must be

18

sent to arbitration—even if this will lead to piecemeal litigation. A trial court may not issue a blanket refusal to compel arbitration of some of a party's claims, merely because the party has other claims which are not subject to the arbitration agreement, or because other parties in the lawsuit are not subject to the arbitration agreement.

229 W.Va. at 490, 729 S.E.2d at 812. A circuit court must enforce the bargain of the parties to arbitrate, even where the result might be the inefficient maintenance of separate proceedings in different forums.

The same reasoning applies to the Arbitration Act. The West Virginia Revised Uniform Arbitration Act, West Virginia Code § 55-10-8(a) (2015), requires that if a lawsuit presents multiple claims, some subject to an arbitration agreement and some not, the former claims must be sent to arbitration – even if this will lead to piecemeal litigation. A trial court may not issue a blanket refusal to compel arbitration of some of a party's claims merely because the party has other claims that are not subject to the arbitration agreement, or because other parties in the lawsuit are not subject to the arbitration agreement.

We acknowledge the reasoning of the circuit court, and recognize that the claims by Willow Run against Golden Eagle might be best and most efficiently resolved concurrently with Willow Run's cloud-on-title claims against the new defendants. But Willow Run and Golden Eagle are commercial entities that had previously agreed to arbitrate their disputes. As we noted in *State ex rel. Johnson Controls v. Tucker*, the parties have a right to have their contract enforced, despite the fact that one party's insistence on arbitration "may foster inefficiency and inconsistency." 229 W.Va. at 496, 729 S.E.2d at

19

818 (*quoting* Thomas E. McCurnin, "Two-Party Arbitrations in a Multiple-Party World," 26 Construction Lawyer 5 (Winter, 2006)). In sum, federal and state arbitration laws "permit[] courts to protect parties from grossly unfair, unconscionable bargains; [they do] not permit courts to protect commercial litigants from stupid or inefficient bargains willingly and deliberately entered into." 229 W.Va. at 497, 729 S.E.2d at 819.

The contract between Willow Run and Golden Eagle specifies that disputes regarding performance of the contract are a matter for arbitration. Willow Run's suit has alleged, in effect, that Golden Eagle has breached its performance of the parties' contract. Put simply, there is a valid, enforceable agreement to arbitrate, and the parties' controversy falls within the scope of that agreement to arbitrate. The circuit court's order refusing to enforce the parties' bargain is contrary to the statutory mandate that any valid agreement to arbitrate be enforced. The order must, therefore, be reversed.

## IV. Conclusion

We reverse the circuit court's March 28, 2018, order refusing to compel Willow Run to arbitrate its dispute against Golden Eagle, and remand the case for further proceedings.[9]

Reversed and remanded.

---

[9] We note that the circuit court's order also granted Willow Run's motion to amend its complaint, and Golden Eagle did not appeal that portion of the order. Accordingly, the circuit court's ruling on the complaint amendment remains undisturbed.

20